UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRIS HANSEN,

                                                  Plaintiff,

v.                                                              1:17-cv-01134
                                                             (TWD)

WARREN COUNTY and PEYTON OGDEN,

                                                  Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

OFFICE OF MARTIN J. MCGUINNESS         MARTIN J. MCGUINNESS, ESQ.
Attorneys for Plaintiff

JOHNSON & LAWS, LLC                          GREGG T. JOHNSON, ESQ.
Attorneys for Defendants                           APRIL J. LAWS, ESQ.

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## DECISION AND ORDER

       A trial in this matter is scheduled to begin on November 12, 2019, in Albany, New York, on Plaintiff Chris Hansen's Fourth Amendment excessive force claim against Defendant Peyton Ogden ("Ogden") and state law battery claims against Defendant Warren County and Ogden.[1] Currently pending before the Court are the parties' motions *in limine*. (Dkt. Nos. 36, 37, 38.) The parties submitted oppositions thereto. (Dkt. Nos. 43, 44.) A final pretrial telephone conference was held on November 4, 2019 (the "conference"). (Text Minute Entry 11/04/2019.) Upon due consideration of the motions, the oppositions thereto, and for the reasons stated in the

---

[1] The Court presumes familiarity with the procedural and factual background of this case. (*See generally* Dkt. Nos. 30, 52.)

conference, Defendants' first motion *in limine* (Dkt. No. 36) is denied without prejudice, Defendants' second motion *in limine* (Dkt. No. 37) is granted, and Plaintiff's motion *in limine* (Dkt. No. 38) is granted in part and denied in part without prejudice.

## I. LEGAL STANDARDS

The purpose of a motion *in limine* is to allow the Court to rule in advance of trial on the admissibility of certain forecasted evidence. *Williams v. Raimo*, No. 9:10-cv-245 (MAD/GHL), 2012 WL 4911722, at *1 (N.D.N.Y. Oct. 15, 2012) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citation omitted). Thus, a court considering a motion *in limine* may also reserve decision until trial, "so that the motion is placed in the appropriate factual context." *Id*. The court's ruling regarding a motion *in limine* is also subject to change "when the case unfolds." *Id.* (quoting *Luce*, 469 U.S. at 41).

"As a general matter, all relevant evidence is admissible under the Federal Rules of Evidence unless specifically excluded." *United States v. Perez*, 387 F.3d 201, 209 (2d Cir. 2004) (citing Fed. R. Evid. 402). Evidence is "relevant" if (a) "it has any tendency to make a fact more or less probable than it would be without the evidence" and (b) "the fact is of consequence in determining the action." Fed. R. Evid. 401. "As courts have repeatedly observed, the standard of relevance established by the Federal Rules of Evidence is not high." *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019) (citation, internal quotation marks, and alterations omitted).

However, relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Evidence is considered prejudicial if it involves some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015). "District courts analyzing evidence under Rule 403 should consider whether a limiting instruction will reduce the unduly prejudicial effect of the evidence so that it may be admitted." *Walker*, 365 F. Supp. 3d at 275 (citation omitted). "As the Supreme Court has recognized, limiting instructions are often sufficient to cure any risk of prejudice." *Id.* (quoting *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998) (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993))).

Rule 702 of the Federal Rules of Evidence permits a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to "testify in the form of an opinion or otherwise" provided that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

"The law assigns district courts a 'gatekeeping' role in ensuring that expert testimony satisfies the requirements of Rule 702." *United States v. Farhane*, 634 F.3d 127, 158 (2d Cir. 2011), *cert. denied*, 565 U.S. 1088 (2011). This role as gatekeeper requires a court to make three related findings before permitting a person to testify as an expert: "(1) the witness is qualified to be an expert; (2) the opinion is based upon reliable data and methodology; and (3) the expert's testimony on a particular issue will 'assist the trier of fact.'" *Valente v. Textron, Inc.*, 931 F. Supp. 2d 409, 415 (E.D.N.Y. 2013) (quoting *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)).

## II. DISCUSSION

### A. Defendants' Motion *in Limine* to Exclude Evidence of Facts Not Known to Defendant Ogden and Alternative Force Options Under Rules 401-403

In their first motion *in limine*, Defendants seek to preclude: (1) any testimony by proposed witness, Jack LaBombard[2]; (2) any testimony by proposed witness, William Canale; (3) any evidence about what occurred outside of Gina Canale's living room—other than the dispatch calls Ogden heard en route and the screams that prompted him to enter the living room; and (4) any evidence regarding "alternative" force options allegedly available to Ogden. (Dkt. No. 36.) Plaintiff opposes the motion. (Dkt. No. 43.)

Generally, Defendants argue facts that occurred before and after Ogden arrived on the scene of which he was not aware, and events taking place outside of his awareness, are all irrelevant to the narrow question (of reasonableness) before the factfinder and, therefore, such testimony should be excluded at trial under Rules 401 and 402. (Dkt. No. 36-3.) Defendants further contend that any testimony Jack LaBombard and William Canale would have to offer would have little or no probative value, which would be substantially outweighed by a danger of misleading and confusing the jury and, therefore, should also be precluded under Rule 403. (*Id.*)

As discussed during the conference, the Court agrees with Plaintiff that the jury is entitled to *some* so-called "background narrative" to help explain the situation they are being asked to evaluate, including the testimony of the parties and other witnesses. (Dkt. No. 43.) In his pretrial submissions, Plaintiff indicates John LaBombard will testify as to his interaction with and observations of Gina Canale and Plaintiff on October 23, 2016, including Gina Canale's assaultive behavior, as well as his observation of Plaintiff's injuries after the incident. (Dkt. No.

---

[2] Plaintiff refers to this proposed witness as John LaBombard. (*See, e.g.*, Dkt. Nos. 43, 62.)

4

67 at ¶ 1.)  William Canale will testify as to his actions on October 23, 2016, including receiving phone calls from John LaBombard and Plaintiff and traveling to Gina Canale's residence, as well as his observations at her residence.  (*Id*. at ¶ 2.)

Contrary to Defendants' assertions, the Court finds such testimony *is* relevant under Rule 401 and its probative value is *not* "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" under Rule 403.  Moreover, the Court finds the total exclusion of all such "background narrative" is overly broad and prejudicial to Plaintiff and an appropriate instruction, if necessary, will sufficiently cure any risk of prejudice to Defendants.  *See Walker*, 365 F. Supp. 3d at 275 (finding limiting instructions are often sufficient to cure any risk of prejudice).

In short, the Court agrees with Plaintiff that such testimony is key to the jury's ability to put the "parties' conduct into context" and evaluate the credibility of testimony.  (Dkt. No. 43 at 10.)  However, as discussed during the conference, the Court will take appropriate steps to limit the presentation of this kind of evidence in the event it becomes cumulative or otherwise improper.  Therefore, Defendants' motion to exclude all "facts not known to Ogden" is denied without prejudice.

As to Defendants' request to preclude any "alternative" force options allegedly available to Ogden, Plaintiff responded in opposition that his proposed expert witness, Ken Cooper ("Cooper"), "should be able to generally discuss all the different types of force covered in the use of force continuum, including tasers, pepper spray, etc." but acknowledges that Ogden should not be "faulted" for failing to use alternative force options "unavailable" to him.  (Dkt. No. 43 at 15-16.)  However, inasmuch as the Court is granting Defendants' motion to preclude Cooper from testifying as an expert witness in this case, *see infra*, this request, as narrowed by

Plaintiff's opposition submission and discussed during the conference, is denied as moot and without prejudice.[3]

### B. Defendants' Motion *in Limine* to Preclude Plaintiff's Opinion Witness from Offering Testimony at Trial

In their second motion *in limine*, Defendants seek to preclude Cooper from offering testimony at trial under Rules 103, 401-403, 601, and 701-703. (Dkt. No. 37.) Generally, Defendants argue Cooper has no relevant education, training, or practical experience that would qualify him to give expert testimony in this case (*i.e.*, a case that involves a sworn police officer's use of non-lethal physical force to effectuate an arrest without the use of any firearm or other weapon such as chemical spray or a Taser) and, therefore, Cooper's testimony is unreliable, irrelevant, and a waste of time. (Dkt. No. 39.) Defendants also argue Cooper's testimony should be precluded as he opines on the "ultimate issue" in this case (*i.e.*, whether the degree of force used by Ogden was "reasonable") and, therefore, usurps the role of the finder of facts. (*Id*.) Plaintiff opposes the motion. (Dkt. No. 43.)

As an initial matter, the Court notes the parties agree that Cooper cannot testify as to the "ultimate issue" in this case nor "testify to any other witnesses' credibility or state of mind." (Dkt. Nos. 37, 43.) *See Callahan v. Wilson*, 863 F.3d 144, 153 (2d Cir. 2017) (in a civil

---

[3] The Court notes that some courts have precluded the presentation of any evidence regarding "alternative" uses of force which the law enforcement officer "could have" or "should have" employed under Rules 403 and 402. *See, e.g.*, *Bermudez v. City of New York*, No. 15-CV-3240 (KAM)(RLM), 2019 WL 136633, at *9 (E.D.N.Y. Jan. 8, 2019) (granting motion *in limine* to preclude evidence and argument regarding the "availability of alternatives to defendants" as not relevant and because inquiry into "alternative or lesser means of force would also run afoul of Rule 403 by confusing the trial issues before the jury"); *Estate of Jaquez v. Flores*, No. 10 Civ. 2881 (KBF), 2016 WL 1060841, at *5 (S.D.N.Y. Mar. 17, 2016) (finding the "opportunity to use lesser force is not directly relevant" to the reasonableness determination under Rule 402 and also should be precluded Rule 403). *But see Collado v. City of New York*, No. 11 Civ. 9041 (DAB), 2017 WL 4533772, at *2 (S.D.N.Y. Sept. 27, 2017) (denying defendants' motion to exclude evidence of lesser force options).

excessive force claim, the district court acted within its discretion in precluding an expert from testifying that the defendant officer did not act reasonably under the circumstances, because the testimony would "intrude on the jury's exclusive role as the finder of facts"); *Hygh v. Jacobs*, 961 F.2d 359, 364 (2d Cir. 1992) (expert testimony that officer's conduct was "not justified" or "totally improper" should have been excluded).

Plaintiff argues, however, that Cooper is "allowed [] to testify as to his extensive knowledge and experience on the subject of the use of force and respond to questions based on the facts previously presented at trial by witnesses and other evidence." (Dkt. No. 43 at 12.) Plaintiff contends "[t]his *will* help the jury evaluate the reasonableness of Deputy Ogden's use of force." (*Id.*)

In fulfilling its gatekeeping role, "[t]he threshold question under Rule 702 is whether the witness is qualified to provide expert testimony on the subject matter at hand." *Tardif v. City of New York*, 344 F. Supp. 3d 579, 595 (S.D.N.Y. 2018). "To determine whether a witness qualifies as an expert, courts compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Krause v. CSX Transp.*, 984 F. Supp. 2d 62, 74 (N.D.N.Y. 2013) (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)). "In assessing whether a proposed expert is 'qualified,' the trial judge should remember the 'liberal[ ] purpose' of [Rule] 702, and remain 'flexibl[e]' in evaluating the proposed expert's qualifications." *Rizzo v. Applied Materials, Inc.*, No. 6:15-cv-577 (MAD/ATB), 2017 WL 4005625, at *6 (N.D.N.Y. Sept. 11, 2017) (quoting *Krause v. CSX.*, 984 F. Supp. 2d at 74 (citing *United States v. Brown*, 776 F.2d 397, 400 (2d Cir. 1985))); *see also Lappe v. Am. Honda Motor Co.*, 857 F. Supp. 222, 227 (N.D.N.Y. 1994) ("Liberality and flexibility in evaluating qualifications should be the rule; the proposed expert should not be

7

required to satisfy an overly narrow test of his own qualifications."), *aff'd* 101 F.3d 682 (2d Cir. 1996); *see also Canino v. HRP, Inc.*, 105 F. Supp. 2d 21, 27 (N.D.N.Y. 2000) ("[A]ssuming that the proffered expert has the requisite minimal education and experience in a relevant field, courts have not barred an expert from testifying merely because he or she lacks a degree or training narrowly matching the point of dispute in the lawsuit.") (internal citation omitted). "Having said that, of course, 'a district court may properly conclude that witnesses are insufficiently qualified where their expertise is too general or too deficient.'" *Krause*, 984 F. Supp. 2d at 74 (alterations omitted) (quoting *Stagl v. Delta*, 117 F.3d 76, 81 (2d Cir. 1997) (collecting cases)).

Here, Defendants argue Cooper is not qualified to offer opinion testimony related to the use of non-lethal physical force in effecting a lawful arrest. (Dkt. No. 39 at 12-16.) In response, Plaintiff argues, *inter alia*, Cooper will "appl[y] his specialized knowledge 'dealing with use-of-force issues based on Article 35 New York State Penal Law, [his] knowledge of approach and control of suspects and how to deal with a tactical situation when approaching a physical confrontation.'" (Dkt. No. 43 at 13.[4])

Specifically, Plaintiff refers to Cooper's curriculum vitae, highlighting that he received "numerous certifications and trainings on the use of force, and has testified as an expert witness relative to the use of force in approximately three dozen cases (not all for trial)." (*Id*. at 14.) He notes Cooper has taken courses regarding police arrest and control techniques through at least two organizations—The International Association of Law Enforcement Firearms Instruction and the International Law Enforcement Educators and Trainers Associations, which provided training in "all sorts of law enforcement type training" including "defensive tactics." (*Id*.)

---

[4] Article 35 of the New York Penal Law states, in full, "In any prosecution for an offense, justification, as defined in sections 35.05 through 35.30, is a defense." N.Y. Penal Law § 35.00.

8

Plaintiff states Cooper has received "extensive training on the 'use of force continuum' which includes training on 'hard hand techniques' and the approach and control of suspects" and that he "possesses knowledge relative to approaching and controlling suspects, and the use of force under Penal Law Article 35." (*Id*. at 14-15.) Cooper also is a "New York State certified general topics (instructor) for *armed guards* and the curriculum contains instruction on the use of force continuum." (*Id*. at 15, emphasis added.) Plaintiff maintains Cooper is qualified to give expert opinion on the non-lethal use of force, and is particularly qualified to do so in this case "given its domestic nature which he frequently deals with in his position as security director for Bard College" because he "deals with domestic violence situations among students '*all the time*.'" (*Id*. at 15, emphasis in original.) Plaintiff argues the fact that Cooper has a "seemingly unique expertise in firearms does not preclude his expertise on nonlethal force." (*Id*.)

However, as discussed during the conference, the Court finds Cooper's knowledge, education, experience, and skills do not translate into expertise on the subject matter of the proffered testimony, as indicated in Plaintiff's pretrial submission: "Cooper will testify as to his qualifications on police use of force, the use of force continuum generally, the application of the use of force continuum in specific factual contexts, and will give other testimony to assist the jury in determining whether Deputy's Ogden use of force was reasonable without giving legal conclusions or encroaching on the jury's province as the finder of fact." (Dkt. No. 67 at ¶ 5.)

Despite his extensive experience supervising and training civilians, security guards, and corrections officers, Cooper has never been a policeman, attended or taught at the police academy, executed an arrest, or developed police procedures or policies. (*See generally* Dkt. No. 39 at 12-14.) Simply put, this case does not involve a corrections officer or a security guard, and this case does not involve a domestic dispute between students on a college campus.

In analyzing Cooper's qualifications as required by Rule 702, the Court finds that while Cooper may be competent to testify in other matters, and seemingly has offered testimony in other courts, he is not qualified to testify to the issues presented in this case, namely, a police officer's use of non-lethal physical force to effectuate an arrest without the use of any firearm, Taser, or chemical spray.

For these reasons, and the reasons stated in the conference, the Court finds Cooper does not meet the threshold qualification to testify as an expert in this action and his testimony is excluded. Therefore, Defendants' motion (Dkt. No. 37) is granted.

### C. Plaintiff's Motion *in Limine*

In his motion, Plaintiff seeks to preclude: (1) any evidence or argument relating to Plaintiff's subsequent arrest for Assault in the Third Degree in Glens Falls City Court on or about August 27, 2017; (2) expert opinion testimony from Deputy Daniel Habshi ("Habshi") regarding Ogden's use of force on Plaintiff; and (3) Plaintiff's alleged out-of-court statement to the Sheriff's Department regarding the "appropriateness" of Ogden's use of force. (Dkt. No. 38.) Plaintiff also seeks an order permitting the testimony of Karista Mechanick ("Mechanick") in open court via contemporaneous transmission from a different location if necessary. (*Id.*) Defendants oppose the motion. (Dkt. No. 44.)

As to evidence of Plaintiff's subsequent arrest on August 27, 2017, for Assault in the Third Degree, the Court finds such evidence is generally irrelevant and its probative value is substantially outweighed by the danger of unfair prejudice under Rules 401, 402, and 403. However, as discussed during the conference, to the extent Plaintiff testifies about emotional distress and/or other non-physical injuries or economic losses he claims to have suffered as a result of the October 23, 2016, incident at issue, he will "open the door" for questioning on

subsequent arrests. *See, e.g.*, *Picciano v. McLoughlin*, No. 5:07-CV-0781 (GTS/GJD), 2010 WL 4366999, at *2 (N.D.N.Y. Oct. 28, 2010) ("[I]n the event that Plaintiff testifies at trial that he suffered a 'fear' of police officers . . . as a result of the incident of August 4, 2014, which is the subject of this litigation, the Court will permit Defendant to ask Plaintiff whether he has been arrested on more than one occasion since August 4, 2004. This is because his subsequent arrests are probative of Plaintiff's claim for emotional damages, and the probative value of the testimony is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."). Therefore, Plaintiff's motion to exclude any evidence or testimony regarding his August 27, 2017, arrest is granted without prejudice and subject to reconsideration at trial for impeachment purposes.

Plaintiff also seeks to the exclude Habshi from testing as an expert witness regarding Ogden's use of force. Generally, Plaintiff argues Habshi does not possess the requisite qualifications to render an expert opinion under Rule 702 and that, even if he were qualified, his expert testimony should still be excluded under Rule 403 because it would be unfairly prejudicial, misleading, and confusing to the jury. (Dkt. No. 38-2 at 8-10.)

First, unlike Cooper, the Court finds Habshi is well-qualified to opine on the issue of use of force in this case based on his experience and credentials, which include, *inter alia*, more than fifteen years of experience as an active police officer, formal and specialized education training in police operations including the use of force and defensive tactics by police, experience using and deploying non-lethal force in police arrest scenarios, and his experience training police officers in the proper and safe use of defensive tactics and use of force to effectuate arrests. (Dkt. Nos. 44-5, 44-3.) *See, e.g.*, *Montanez v. City of Syracuse*, No. 6:16-cv-550 (BKS/TWD), 2019 WL 4257134, at *8 (N.D.N.Y. Sept. 9, 2019) (finding proposed expert on police

11

disciplinary procedure to have sufficient knowledge and experience regarding the subject matter to qualify as an expert based on his fifteen years of experience as a police officer and at least five years of experience in police disciplinary investigations and procedure).

Here, the Court finds Habshi's specialized knowledge may assist the trier of fact in this case. Thus, any "quibble" with Habshi's knowledge on specific points may properly be explored on cross-examination at trial and thus goes to the weight and credibility of the expert's testimony, not admissibility. *See Canino*, 105 F. Supp. 2d at 28.

Second, the Second Circuit has held that a witness offering "dual testimony," *i.e.*, testifying as both an expert and fact witness, "is not objectionable in principle." *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000); *see also United States v. Dukagjini*, 326 F.3d 45, 56 (2d Cir. 2003) (declining "to prohibit categorically the use of case agents as experts" despite risk of juror confusion). However, courts "must exercise particular vigilance to ensure that the witness's dual role does not impair the jury's ability to evaluate credibility[.]" *Feldman v. Van Gorp*, No. 03 Civ. 8135(WHP), 2008 WL 5429871, at *2 (S.D.N.Y. Dec. 19, 2008) (citing *United States v. Cruz*, 363 F.3d 187, 195 (2d Cir. 2004)); *see, e.g.*, *United States v. Morales*, 474 F. App'x 30, 33 (2d Cir. 2010) (summary order) (finding no reversible error by admitting so called "dual testimony" of detective where "the district court guarded against the risk of juror confusion by limiting [the detective's] expert testimony to issues beyond the knowledge of the average juror . . . [and] when [the detective] began to offer testimony as to facts he learned during the course of his investigation, the district court specifically instructed the jury that he was no longer testifying as an expert"). Here, the Court finds appropriate limiting instructions will adequately address Plaintiff's concerns and guard against any potential confusion.

In light of the foregoing, Plaintiff's motion to preclude Habshi from testifying as an expert is denied. Habshi is qualified to testify as an expert witness under Rule 702 and will be permitted to testify as both an expert and fact witness in this case.

Further, Plaintiff's motion to preclude evidence of Plaintiff's alleged out-of-court statement to the Sheriff's Department regarding the "appropriateness" of Ogden's use of force is denied without prejudice. (Dkt. No. 38.) As discussed during the conference, any such statement is categorized as non-hearsay under Rule 801 as an opposing party's statement. Fed. R. Evid. 801(d)(2)(A). Accordingly, this request is denied without prejudice and such evidence will be permitted upon the laying of a proper foundation.

As to Plaintiff's request seeking permission for Mechanick to testify at trial via contemporaneous transmission from a different location (presumably North Carolina), the motion is denied. (Dkt. No. 38.) Mechanick was deposed on April 13, 2018. (*See* Dkt. No. 28-7.) To the extent Mechanick does not appear to testify at trial voluntarily, and she is not subject to the Court's subpoena powers under Rule 45 of the Federal Rules of Civil Procedure, she becomes an "unavailable" witness and her previously recorded testimony may be used at trial. *See, e.g.*, *Williams v. Arctic Cat, Inc.*, No. 3:11-CV-445 (TJM), 2014 WL 1028476, at *5-6 (N.D.N.Y. Mar. 13, 2014) ("[a]ssuming that the witnesses do not appear voluntarily . . . their testimony on the matter is available by other means . . . [the relevant testimony] has previously been the subject of depositions of the relevant parties and will be made available to the jury at trial"). While live testimony is certainly preferred, the Court finds that "good cause and compelling circumstances do not exist" to warrant granting Plaintiff's request. Therefore, Plaintiff's motion is denied in this respect.

**ACCORDINGLY**, it is hereby

**ORDERED** that Defendants' motion *in limine* (Dkt. No. 36) is **DENIED WITHOUT PREJUDICE** as set forth above; and it is further

**ORDERED** that Defendants' motion *in limine* (Dkt. No. 37) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion *in limine* (Dkt. No. 38) is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE** as set forth above.

Dated: November 8, 2019
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge